**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREEZEL JONES, Jr.,

    Petitioner,    Civil No. 05-CV-71989-DT
                                 HONORABLE MARIANNE O. BATTANI
v.    UNITED STATES DISTRICT JUDGE

ANDREW JACKSON,

    Respondent,
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

Freezel Jones, Jr., ("Petitioner"), presently confined at the Mound Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree criminal sexual conduct, M.C.L.A. 750.520(b)(1)(e); and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I.  Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

Complainant testified that she and defendant lived together at their

1

place of employment, a hotel called the Ambassador Inn, in Southfield, and that on the evening of January 7, 2002, she and defendant were working a banquet at the hotel when defendant accused her of being unfaithful, an accusation he made periodically throughout their relationship. After the banquet finished around 1:00 a.m., complainant and defendant went to their room. Defendant locked the door behind them and placed a plastic bag by the door so that complainant could not leave the room without waking him. Complainant testified that defendant accused her of being unfaithful, called her "bitch," "whore," and "tramp," and around 4:00 a.m. picked up complainant's underwear. Defendant saw a discharge on the underwear, which complainant said was caused by medication she was taking, but which defendant thought was another man's semen. Defendant then got a knife, told complainant to remove her clothes, had her bend over on the bed on her hands and knees, and anally penetrated her, saying that she better scream in the pillow because he did not want anyone hearing her. Complainant testified that defendant used no lubricant and ripped her anus during the rape, and that she was bleeding and temporarily lost control of her bowels after the rape. Complainant testified that after the rape, she did not feel she could safely leave the hotel room because defendant would hear her, and because defendant had threatened her and her family previously.

Complainant testified that she fell asleep around 6:00 a.m. and got up for work about three hours later. She testified that defendant was still in the room, and that she was still bleeding. She and defendant punched in for work. She then went down to the bathroom in the hotel, and then left the hotel without her coat or purse. The police were called from a nearby office. The police responded to the call and she reported the incident to them. She was then taken to Providence Hospital.

The police went to the Ambassador Inn to pick up defendant. They were told he was cleaning rooms and he was summoned by hotel staff, but defendant never appeared. While police were searching the hotel for defendant, a 911 call was received, in which the caller reported an "officer down" at a Southfield location. Several uniformed police officers left the Ambassador Inn to attend to that 911 call, but Officer Porter, who was in plain clothes, stayed. Officer Porter located and arrested defendant in the Ambassador Inn, and noted a recent 911 call on defendant's cell phone. Defendant admitted making the false 911 call, and at that time admitted hiding in a linen closet while the police

searched for him.

Jeanne Taunt, a registered nurse at Providence Hospital's emergency room, testified that she treated complainant on the morning of January 8, 2002, that complainant presented complaining of rectal pain from an assault, and that complainant was crying and visibly upset. After her memory was refreshed with her nursing notes, Taunt testified that complainant was also complaining of rectal bleeding, and had said that at 4:00 a.m. that morning she had been forced to have anal sex and was threatened with a carving knife. Taunt testified that complainant's injuries on examination included "a fissure, which is a tear of the tissue right at the base of the perineal area, the vaginal area," and an internal discharge. Complainant's medical records were admitted at trial without objection.

Complainant testified at trial that defendant was a controlling person prone to violence. She described violent episodes, including defendant's barricading the doors so she would not be able to leave, threatening to kill her, not allowing complainant to go anywhere by herself, and threatening her family members by telephone. Complainant also testified that she lost her job at the hotel because of this incident, that she was not permitted to go on living at the hotel, that she stayed at a shelter for battered women for about a month after the incident, and then returned to live with defendant. Complainant testified that she still loved defendant, and that she feared he would continually harass her family if she did not go back to him.

Defense counsel vigorously cross-examined complainant about the circumstances that led her to move back in with defendant, eliciting from complainant that she ran into defendant at church one Sunday, after which they "rode around," had Kentucky Fried Chicken, and then went to a hotel and had consensual sex.

Defendant testified at trial that although he and complainant argued during their relationship, there had been no physical altercations, and that complainant would become intoxicated and call the police, but later she would come back to him. Defendant categorically denied ever threatening complainant or her family members, and denied ever displaying violence toward complainant. Defendant testified that he and complainant had argued on the night of the incident, but that they had made up by the time they went to bed, and that the sex had been

3

consensual, as always.

Defendant testified that the next morning, he and complainant worked together and that the next thing he knew, the police were looking for him.  He testified he did not want to go to jail, as he had in the past when complainant had called the police, so he made the false 911 call. Defendant testified that one of the hotel employees told him the police were there about his woman claiming he had a knife.  Defendant denied at trial that he hid in the linen closet, contrary to what he told police the morning of the incident.  Defendant admitted placing plastic bags in the door to the hotel room where he and complainant lived, but testified that it was because other hotel employees committed theft, not to dominate or control complainant's movements.

*People v. Jones,* No. 248547, * 1-3 (Mich.Ct.App. July 27, 2004).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 472 Mich. 893; 695 N.W. 2d 74 (2005).  Petitioner now seeks habeas relief on the following grounds:

I.  Defendant was denied due process when the trial court erred reversibly in admitting evidence of defendant's past violent acts against the complainant and members of her family.  This evidence was inadmissible under M.R.E. 404(B) when it was introduced to show defendant's bad character.

II. The trial court erred reversibly when, in the guise of character evidence, it permitted the complainant's sister to testify on rebuttal that defendant was a violent person and that the complainant's testimony was truthful.

III.   The trial court erred reversibly when it relied on the rape shield law to prevent the defense from introducing evidence of complainant's past and subsequent sexual conduct with defendant.

IV. Defendant Jones was denied a fair trial when the prosecutor attempted to hand Mr. Jones a knife while he was on the witness stand.

4

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III.  Discussion

**A.  Claims # 1, 2, and # 3.  The evidentiary claims.**

The Court will discuss petitioner's first three issues together for the

5

purpose of judicial clarity, because all three claims involve state law evidentiary issues.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

In his first claim, as well as in part of his second claim, petitioner contends that the prosecutor introduced "prior bad acts" evidence concerning petitioner's prior violent acts against the victim and her family, in violation of M.R.E. 404(b).

The admission of this "prior bad acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Morever, as the Michigan Court of Appeals indicated in their opinion, petitioner's prior violent conduct towards the victim and her family was relevant to explain why the victim did not report the sexual assault immediately after it occurred, and was also

6

relevant to explain why the victim resumed her relationship with petitioner after the sexual assault. *People v. Jones,* Slip. Op. at * 4. Under federal law, petitioner's prior violent acts against the victim and her family would be admissible under F.R.E. 404(b) to explain why the victim submitted to the sexual assault and her delay in reporting the sexual assault to the police. *See United States v. Powers,* 59 F. 3d 1460, 1464 (4th Cir. 1995).

In his second claim, petitioner contends that the prosecutor improperly elicited testimony from the victim's sister, Leslie Johnson, that her sister was a truthful person and that her trial testimony was worthy of belief. The Michigan Court of Appeals rejected this claim, finding that Johnson's opinion testimony as to the victim's truthful character was admissible pursuant to M.R.E. 608(a)(2), because the defense had attacked the victim's veracity at trial. *People v. Jones,* Slip. Op. at * 5-6. In this case, the Michigan Court of Appeals' holding that petitioner had opened the door to evidence of the victim's character, was not contrary to, or an unreasonable application of, clearly established federal law so as to entitle petitioner to habeas relief. *See DeLoach v. Hamlet,* 74 Fed. Appx. 696, 697 (9th Cir. 2003).

In his third claim, petitioner contends that the trial court improperly relied on the notice provisions of Michigan's rape shield law, M.C.L.A. 750.520j, to prevent him from introducing evidence of sexual activity between the victim and petitioner both before and after the sexual assault, to establish that the sexual

7

act between the victim and petitioner on the night in question was consensual.

Petitioner's claim that state court improperly applied Michigan's rape shield law by excluding evidence of sexual relations between the victim and himself is a noncognizable claim in federal habeas corpus, because it basically involves a claim of state law. See *Dixon v. White,* 366 F. Supp. 2d 528, 537 (E.D. Mich. 2005).

In addition, the legitimate interests served by the notice requirement of a rape shield statute can, in some circumstances, justify precluding evidence of a prior sexual relationship between a rape victim and a defendant without running afoul of the Sixth Amendment. *Michigan v. Lucas*, 500 U.S. 145, 151-53 (1991). The legitimate state interests behind a rape shield statute include giving a rape victim a heightened protection against surprise, harassment, and unnecessary invasions of privacy and may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Id.*

Finally, the exclusion of the evidence was harmless error at best.  For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In the present case, the exclusion of some of the evidence of consensual sexual relations between the victim and petitioner was harmless error, at best, in light of the fact that some evidence of a consensual sexual relationship between the victim and petitioner was admitted into evidence. *See e.g. Tyson v. Trigg,* 50 F. 3d 436, 447 (7th Cir. 1995). Moreover, in light of the fact that there was additional physical evidence which suggested that the victim was sexually assaulted against her will, the exclusion of evidence of consensual sexual relationships between petitioner and the victim was harmless. *Id.*

**2.  Claim # 4.  The prosecutorial misconduct claim.**

In his final claim, petitioner claims that he was denied a fair trial when the prosecutor attempted to hand him the knife that he allegedly used during the sexual assault while he was on the witness stand.

In rejecting this claim, the Michigan Court of Appeals noted that although the prosecutor's conduct was "highly improper", it did not deprive petitioner of a fair trial, in light of the fact that petitioner declined to pick up or touch the knife, and a court officer, a deputy and the trial judge ordered petitioner not to pick up the knife. *People v. Jones,* Slip. Op. at * 7. In particular, the Michigan Court of Appeals concluded that the court's officer's conduct in ordering petitioner not to pick up the knife appeared to be as much an admonition to the prosecutor, as it was a warning that petitioner would endanger those present. *Id.* The Michigan Court of Appeals further concluded that the trial judge's comment, made in the

jury's presence, that he controlled the courtroom, would have lead the jury to understand that no one, not just petitioner, should possess a knife in court. *Id.*

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

Although the prosecutor's tactic of asking petitioner to pick up the knife may have been improper, it does not entitle petitioner to habeas relief, in light of the fact that the incident was isolated, the jury was admonished, and the evidence against petitioner was substantial. *See e.g. State v. Anderson,* 448 N.W. 2d 32, 33-34 (Iowa 1989). Petitioner is not entitled to habeas relief on his final claim.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). A district court thus has the power to deny a certificate of appealability *sua sponte. Dell v. Straub,* 194 F. Supp. 2d 629, 658 (E.D. Mich. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell,* 194 F. Supp. 2d at 659. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the

appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

        s/Marianne O. Battani
        **HON. MARIANNE O. BATTANI**
        UNITED STATES DISTRICT COURT

DATED: March 10, 2006